**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gordon J. BAIRD, Jr., Defendant–
Appellant.**

No. 96–6324.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 21, 1997.

Decided Jan. 28, 1998.

Alfred H. Knight (argued and briefed), Alan D. Johnson, William R. Willis, Jr. (briefed), Willis & Knight, Nashville, TN, for Defendant–Appellant.

Darryl A. Stewart, Asst. U.S. Attorney (argued and briefed), Nashville, TN, for Plaintiff–Appellee.

Before: MERRITT, MOORE, and BRIGHT *, Circuit Judges.

BRIGHT, J., delivered the opinion of the court, in which MERRITT, J., joined. MOORE, J. (p. 1284), delivered a separate concurring opinion.

---

* The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. For purpose of clarity, we state below the text of Count One and Count Two.

*COUNT ONE*
The Grand Jury charges:
  On or about June 29, 1990, in the Middle District of Tennessee, GORDON J. BAIRD, JR., in a matter within the jurisdiction of the United States Department of Defense, an agency of the United States, did make and use a false writing, knowing that it contained a false, fictitious and fraudulent material statement, in that GORDON J. BAIRD, JR., on behalf of Raven Industries, Inc., Hendersonville, Tennessee, submitted or caused to be submitted to the Defense Contract Management Area Operation, Birmingham, Alabama, a "Contractor's Request for Progress Payment," Standard Form 1443, which represented that Raven Industries, Inc. had incurred costs of Forty Nine Thousand, Two Hundred Thirty One Dollars

## OPINION

BRIGHT, Circuit Judge.

Gordon J. Baird, Jr. serves as the chief executive officer and sole stockholder of Raven Industries, Inc. (Raven) located in Hendersonville, Tennessee. Raven served as a government contractor for the construction of anti-submarine missile cables for the United States Navy. The government charged that defendant Baird fraudulently obtained advance or progress payments from the government and then sought to cover-up the fraudulent requests for payments by submitting falsified documents to support the payment request. On the basis of this alleged conduct, Baird was charged in a three-count superseding indictment. In Count One, the government charged Baird with falsely submitting a contractor's request for progress payment in the sum of $49,231.50 for materials ordered from Turner Engineering Co. of Stevensville, Montana, when Baird knew and believed that said *costs had not been incurred*, in violation of 18 U.S.C. §§ 1001 and 2. In Count Two, the government charged Baird essentially with obstructing and impeding a federal auditor in the performance of official duties by submitting false documents representing that Raven had incurred material costs of $49,231.50 from Turner Engineering when Baird knew and believed said documents were false and fictitious for Raven "had not incurred said costs under [the government] contract."[1] In Count Three, the

and Fifty Cents ($49,231.50), under Navy Contract Number N00104–87–C–A139, for materials ordered from Turner Engineering of Stevensville, Montana, whereas in truth and in fact, as GORDON J. BAIRD, JR. well knew and believed, said costs had not been incurred. In violation of Title 18, United States Code, Sections 1001 and 2.

*COUNT TWO*
The Grand Jury further charges:
  In or about November, 1990, in the Middle District of Tennessee, GORDON J. BAIRD, JR., with intent to defraud and deceive the United States, did endeavor to influence, obstruct and impede a federal auditor in the performance of official duties relating to the receipt by Raven Industries, Inc. of in excess of One Hundred Thousand Dollars ($100,000.00) within a one year period directly from the United States, to-wit: the United States Department of Defense, in that GORDON J. BAIRD, JR. submitted or caused to be submitted documents which represented that Raven Industries, Inc. had in-

government charged Baird with unlawfully selling property of the United States in connection with the company's work as a contractor. Count Three is not material to the appeal as the jury determined Baird to be not guilty on this charge.

The gravamen of the government's charges focuses on whether or not Raven had *incurred costs* with its subcontractor, Turner Engineering, on or about June 29, 1990. As this opinion observes, considerable confusion existed among counsel, the court and the jury relating to the term incurred costs. During the course of the trial, the term incurred costs took on varying meanings as to the indictment, under the government contract regulations, and the requirements of the government for progress payments. This confusion and the failure of the district court to instruct the jury on incurred costs, as used in the indictment, especially after the jury indicated some confusion on the issue, requires a remand for a new trial.

In this appeal, Baird raises the following issues:

(1) Baird asserts that the district court erred in treating the definition of "incurred costs" as a fact question to be determined by the jury on the basis of the testimony and the regulations, without any judicial guidance or instructions as to its meaning. We determine this issue has merit for the reasons stated below and therefore reverse and remand for a new trial.

(2) Baird contends that his convictions violate due process of law in that the meaning of the term "incurred costs," contained in the government regulation, which underlies this prosecution, is too vague, ambiguous and discretionary to serve as a basis for criminal liability. We reject this contention.

(3) Baird argues that the evidence is insufficient to support the charges on Counts One and Two of the indictment. We reject this contention.

(4) Baird maintains that the trial court improperly based his sentence on a finding that the government incurred a loss of $47,000.00, although the actual loss sustained by the government could not have exceeded the interest represented by the loss of the use of $47,000.00 for a four-month period. Although we reverse and remand this matter for a new trial, we comment on this issue as it might arise on retrial.

## I. BACKGROUND

The government awarded Raven the United States Navy's contract nos. N00104–87–C–A112 and N00104–87–C–A139 for the construction of anti-submarine missile cables. During the course of the contract and prior to its termination in 1992,[2] the government had made substantial progress payments to Raven based at the rate of 90% of the contract costs Raven certified it had incurred.

The government's evidence indicated that beginning in May of 1990, Baird had been in contact with one or more representatives from Turner Engineering for the purpose of getting a bid upon and perhaps purchasing materials from Turner Engineering. However, the government's proof indicated that neither Baird nor Raven entered into any formal contract with Turner in June of 1990. Subsequent to these conversations, Baird executed a request for progress payments under contract A139 in which he certified that Raven had incurred $49,231.50 in costs relating to materials received from Turner Engineering. He attached, as an addendum, a reference to Raven's purchase order no. 492 for the items.

curred material costs of Forty Nine Thousand, Two Hundred Thirty One Dollars and Fifty Cents ($49,231.50) from Turner Engineering, Incorporated, Stevensville, Montana for the production of various electrical cables, whereas in truth and in fact, as GORDON J. BAIRD, JR. well know [sic] and believed, said documents were false and fictitious for Raven In-

dustries had not incurred said costs under Contract Number N00104–87–C–A139.
In violation of Title 18, United States Code, Sections 1516 and 2.
Jt.App. at 19–22.

2. The government terminated the contract before completion. A civil suit is pending by Raven against the United States.

The government's evidence also indicated that a clerical employee of Raven had prepared a purchase order dated May 31, 1990 relating to Turner Engineering and that she also prepared a document which appeared to be an invoice from Turner Engineering to Raven. These documents were placed in the file. The evidence further indicated that those documents were not in fact ever sent to or received from Turner Engineering and that Turner Engineering did not ship any materials to Raven in response to any May order, contained in the June 29, 1990 request for progress payments. However, Turner Engineering did receive a different purchase order from Raven, dated November 1, 1990, and pursuant to that purchase order shipped the requested items in January of 1991. Phillip Belangie, one of the owners of Turner Engineering, testified that Turner Engineering had no obligation to supply Raven with any materials or parts prior to receiving the purchase order, dated November 1, 1990, on November 12, 1990.

The government contends and presented proof that the alleged tangled web of deceit by Baird continued into November of 1990. On that occasion, Jeffrey Ingram, a government auditor, came to check on a series of progress payments which had been requested by Raven. Raven's representative showed the auditor the May 31, 1990 purchase order and the document purporting to be an invoice from Turner Engineering. Ingram also reviewed two receiving documents indicating that the materials from Turner Engineering had arrived.[3] Based on these documents furnished to Ingram, Ingram concluded that the June 1990 costs had been adequately supported for purposes of the progress payments. The presentation of these documents to Ingram formed the basis for Count Two of the indictment.

Substantial trial testimony presented by the government related to the requirements for progress payments. On this issue, the witnesses were not consistent. Jeffrey Ingram's testimony indicated that, with respect to progress payments, the audit required a purchase order, invoices and receiving re-

ports to support the progress payment requirement. See Jt.App. at 328–29 (stating that to support a progress payment request, a contractor should show that "he would have ... ordered the material and actually had received ... a bill or an invoice for that material"). However, Ingram also indicated that either an invoice or a purchase order, plus an explanation from the contractor might support a progress payment. Agent Leroy Drake, who is an administrative contracting officer, testified that in addition to a purchase order, the contractor requesting a progress payment may need to show that the goods had been received.

In response to the government's charges that Raven had not incurred costs, Baird provided the following explanation. Baird testified that he negotiated with Turner Engineering in May of 1990, first with Penny Sullivan and then with one of Turner Engineering's owners, Marilyn Neuvonen. Baird testified with regard to Turner Engineering that he had completed the agreement orally with Marilyn Neuvonen. Baird asserted that he thought a purchase order had been sent and he directed the preparation of the documents in the file which we have described, that is, the purchase order form, the invoice form and the documents showing receipt of the materials from Turner Engineering. Baird stated that these documents merely served as a reminder that Raven would receive the materials from Turner Engineering. Baird claimed that he had explained to Ingram during the November audit, that the papers Ingram reviewed were only reminders that he had ordered the materials from Turner Engineering. At trial, Ingram testified he did not recall having any such conversation with Baird during the audit. Penny Sullivan, called by the government in rebuttal, testified that she worked for Turner Engineering and that she had negotiated with Baird for the parts in question under the progress payment no. 5. However, Sullivan indicated that she did not come to any agreement with Baird and knew that later an order for those materials had been sent to

---

**3.** Lester McGill, quality director for Raven, testified that to his knowledge Raven did not receive the parts from Turner Engineering in June of 1990.

Turner Engineering (the November purchase order).

Baird further stated that he did not know that the June purchase order had not been sent to Turner Engineering. According to Baird, when he discovered that an order had not actually been made, he proceeded to reconfirm the order and to send the necessary paperwork to Turner Engineering in order to receive the goods. He stated that the goods were received in January of 1991 and that he paid for them. Baird also stated that he did not put in another progress payment for those items because he had been paid earlier for the same items.

The district court's understanding of incurred costs seems to indicate that an expense had to be an obligation although not necessarily paid by the contractor. In the interrogation of Agent John Korab, the court commented during the cross-examination:

> THE COURT: All right. Let's see. Incurred costs doesn't mean that the contractor actually has had to pay the *expense* before he seeks a progress payment, but if he has obligated himself then he may make the request for a progress payment, is that correct?
>
> THE WITNESS: Yes.

Jt.App. at 351 (emphasis added).

The focus on the requirements that auditors and government contracting personnel laid down for progress payments apparently led the jury to ask the following question during its deliberations: "We need clarification for what is needed to procure progress payment." In response to this question, the district court instructed the jury as follows:

> The Court instructs you that you are— that is you, the Jury, are to recall the testimony in this case, you have heard the testimony as it bears on the contentions of the parties with respect to what is required and—and the exhibits that are in evidence.

And in this respect, I direct you to Government Exhibit 100A, 200A, 300A, and instruct you that that is for your consideration as well as the testimony from the witnesses in this case that testified to the requirements for making the request for a progress payment. Is that of assistance to you?

With that background, we turn to the issues.

## II.  DISCUSSION

According to the government, the gravamen of the charge relating to Count One was whether Baird's statement that Raven had *incurred* $49,231.50 in *costs* relating to Turner Engineering was false. The term "incurred costs," which was contained in regulation no. 52.232–16 (48 C.F.R. § 52.232–16), was never defined by the parties or the court. As we have noted above, the various government contracting personnel presented different viewpoints as to what was necessary to obtain a progress payment but at least were consistent in requiring some sort of documentation. The government, in its brief, concedes that incurred costs is a phrase which means "an obligation to pay costs." The government's brief further states that the ordinary and customary meaning of "incur," is " 'to come into or to become subject to through one's own action....' " *See* Govt. Br. at 17 (*quoting Webster's New World Dictionary* 685 (College) (3d ed.1988)).

### A. *Failure to Instruct on "Incurred Costs"*

█ We turn first to the crucial issue in this appeal, which is whether the district court committed plain error in failing to define incurred costs. As we have noted, Baird's criminal liability depended on the question of whether or not Raven incurred costs with Turner Engineering and, if not, whether Baird, in fact, believed that Raven had incurred costs with Turner Engineering.[4]

---

4. The government concedes that Baird's criminal liability under Count One depends on the question of whether or not Raven incurred costs in June of 1990, but argues that question is irrelevant to Baird's criminal liability under Count Two. We note that in Count Two, the falsity

alleged is contained in the final sentence that Baird "well kn[e]w and believed, said documents were false and fictitious for Raven Industries had not incurred said costs under Contract No. N00104–87–C–A139." Thus, even under Count Two the falsity rests on whether or not there was

Because Baird did not object at trial to the district court's failure to define incurred costs for the jury, we review the district court's actions for plain error. *United States v. Jones,* 108 F.3d 668, 670 (6th Cir.1997) (en banc); *see* Fed.R.Crim.P. 52(b) (stating that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). In *Jones,* this court recently outlined the standard for determining whether "plain error" has occurred:

> our inquiry under Rule 52(b) consists of the following four distinct, though interrelated, analyses: (1) whether an error occurred in the district court; (2) if error occurred, whether the error was plain; (3) if the error was plain, whether the plain error affected substantial rights; and (4) "even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings."

*Id.* at 670 (*quoting United States v. Thomas,* 11 F.3d 620, 630 (6th Cir.1993)).

■ We will analyze together the first two prongs of the plain error standard. Plain error is error which is clear or obvious. *See Jones,* 108 F.3d at 671. We conclude that the district court committed plain error by not clearly defining to the jury that the fraudulent statements, underlying the criminal charges, related to the existence of incurred costs rather than the requirements for a progress payment.

The district court in its instructions to the jury on Count One related the requirements of the statute (18 U.S.C. § 1001) and asserted that the government needed to prove for a conviction that Baird made and used a false writing; that in making and using the false writing the defendant acted knowingly and willingly; that the false writing was material and defined a "false or fictitious statement" as "an assertion which is untrue when made or when used and which is known by the

person making it or using it to be untrue." Jury Instr. at 17–18. With respect to the obstruction of the federal audit, the Count Two instruction focused on the requirement that the government had to prove that Baird "endeavored to influence, obstruct and impede a federal auditor in the performance of official duties" and "that such action occurred with the intent to defraud and deceive the United States." Jury Instr. at 19–21. We note that these instructions mention nothing about the underlying requirement of incurred costs and its explanation. Thus, the jury was faced with instructions dealing with falsity that might have applied to either progress payments or to the alleged falsity in Baird asserting that costs had been incurred in fact between Raven and Turner Engineering by the oral agreement for Raven to purchase and Turner Engineering to ship certain parts and materials.

The concept of "incurred costs" as an obligation should have been the issue for the jury in both counts. Instead, the government's witnesses testified about progress payments and gave requirements for progress payments that would not apply to incurred costs. As a result, the jury very clearly seemed to focus on the wrong issue. In fact, in its question to the district court, the jury focused on the requirements for progress payments rather than any definition of incurred costs under the indictment. Specifically, the jury wanted to know "what is needed to procure progress payment[?]"

Although counsel for Baird did not make a specific objection relating to the jury's question, he did indicate that the issue of progress payments was not critically relevant. Specifically, in response to the jury's question, counsel for Baird stated to the district judge that, "Judge, you don't have to have a purchase order. All you have to have is an obligation and that's what the testimony was from the witness." Nevertheless, both the court and the prosecutor thought that an improper request for progress payments constituted an element of the crimes. After discussing the jury's question with both

an incurred cost or a belief that an incurred cost existed. Accordingly, we conclude that both counts present the same underlying questions.

We therefore will discuss both counts together in this section.

counsel, the district court gave a general instruction to the jury to "recall the testimony" and particularly mentioned the requirements for progress payments.

In *United States v. Bryant,* 461 F.2d 912, 920 (6th Cir.1972), this court stated "[o]rdinarily, it will not suffice merely to read to the jury the statute defining the crime. Even though the language of a statute may expressly contain all the elements of the offense, common English words often will have peculiar legal significance." Even though counsel for Baird did not object to the district court's instructions, the jury's request for further instruction should have alerted the district court and all parties that the jury was considering the wrong issue in the case. If the jury could find that Raven had incurred costs or that Baird honestly believed that Raven had incurred costs in making a contract with Turner Engineering in June, those facts could provide a defense to the charges. In the absence of such instruction, we conclude that the district court committed "plain error" in its failure to define the essential element of the charges against Baird. The various bases for progress payments, whether fulfilled by Raven or not, did not support the convictions, if in fact Raven had "incurred costs."

■■■■ The district court's plain error affected Baird's substantial rights. In most cases, affecting substantial rights "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993).

We conclude that Baird's substantial rights were affected by the district court's plain error in failing to instruct on "incurred costs." As we emphasized in *United States v. Bryant,* 461 F.2d 912, 920 (6th Cir.1972), the duty of the trial judge is " 'to tell a jury what facts they must find before they can convict-that is, to instruct the jury as to the elements of the crime charged.' " *Id.* (*quoting United States v. Rybicki,* 403 F.2d 599, 602 (6th Cir.1968)).

■■■■ Under the final prong of this court's plain error standard, we must deter-

mine, as a matter of discretion under Rule 52(b), whether to reverse the conviction to avoid a miscarriage of justice. In *Olano,* the Court stated its view that when an appellate court considers whether to exercise its discretion under Rule 52(b), it should determine whether the plain error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings....' " *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779 (*quoting United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). However, the discretionary application of Rule 52(b) does not require that Baird be "actually innocent." *See United States v. Segines,* 17 F.3d 847, 852 (6th Cir.1994) (*citing Olano,* 507 U.S. at 736, 113 S.Ct. at 1778–79).

This court in *Jones* determined that no miscarriage of justice existed where the defendant could not show "that any alleged error in th[at] case seriously affected the fairness, integrity or public reputation of judicial proceedings." *Jones,* 108 F.3d at 673.

We distinguish this case from *Jones.* Here, the jury by the nature of its question may have convicted Baird because Raven did not supply documentation for progress payments rather than that costs had not been incurred. Such a conviction would be plain error, affect the substantial rights of Baird and may have amounted to an unfair judicial proceeding. Thus, all requirements are met to reverse the convictions for plain error in the instructions. The indictments in both counts required the government to prove for fraud (Count One) and submission of false documents (Count Two) that the costs had not been incurred.

**B.** *Due Process*

■■■■ Baird asserts that the convictions violate due process of law in that the meaning of the term "incurred costs" on which the convictions depend is too vague, ambiguous and discretionary in its application to serve as a basis for imposing criminal liability. This argument is without merit.

In *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), the Court opined that due process protections require criminal statutes to "define the criminal offense with sufficient definiteness

that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." As a preliminary matter, we note that the term "incurred costs" is not contained in the statute concerning false representations but is part of the regulations controlling the right to receive progress payments.

In the present case, the district court gave the jury no definition of "incurred costs." Moreover, the testimony relating to the requirements for progress payments indicated that something more than a mere obligation was required to trigger the right to receive these progress payments. It is clear from the record that the requirements for an entitlement to receive progress payments invoked disagreement. However, such differences in testimony do not mean that the term "incurred costs" is a vague concept. As previously stated, the term "incurred costs" refers to an obligation to pay costs.[5] Accordingly, we reject Baird's claim of a due process violation.

### C. *Insufficiency of Evidence*

■ We turn next to the contention by Baird that the evidence does not support the charges set forth in Counts One and Two of the indictment. In determining whether Baird's convictions are supported by sufficient evidence, the pertinent inquiry for this court to make is whether after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt...." *See United States v. Taylor,* 13 F.3d 986, 991 (6th Cir.1994).

As we already noted, the issue relates to whether or not Raven incurred costs with Turner Engineering. If the jury believed the government's witnesses and disbelieved Baird, the jury was entitled to decide that Baird on behalf of Raven had made no binding agreement with Turner Engineering for

the shipment of any materials and, therefore, his claim that Raven had incurred costs in the request for progress payments was false and fraudulent, justifying Baird's conviction under Count One. Furthermore, the jury was entitled to decide that Baird defrauded and impeded a federal audit by directing an employee to present Ingram with fictitious documents, justifying his conviction under Count Two. Accordingly, we conclude that sufficient evidence in the record exists to support the submission of the case to the jury on Count One and Count Two.

### D. *The Government's Loss for the Sentencing Issue*

■ Although the sentence imposed in this case becomes vacated because of our grant of a new trial, we need to comment on the claim made by Baird that the government for sentencing purposes did not incur a loss of $47,-000.00. It seems to us that if a jury should convict Baird on retrial that, nevertheless, an issue exists whether the government may not have paid Raven more than the amount to which Raven was ultimately entitled. If Raven was entitled to the $47,000.00 which it received, a matter that we do not decide here, the sole damage to the government is the cost of money from the time it paid under the original request for progress payments until it would have paid the progress payment in the normal course of contracting; that is, after Raven had received the materials and could have presented documentation necessary for the progress payment related to Turner Engineering's shipment of materials. Whether Raven was or was not ultimately entitled to the $47,000.00 which it received may be an issue on retrial.

### III. CONCLUSION

For the reasons stated above, we **REVERSE** and **REMAND** for a new trial.

KAREN NELSON MOORE, Circuit Judge, concurring.

---

5. We note that other dictionaries provide definitions of "incur" that are consistent with the definition that the government has provided from *Webster's New World Dictionary. See, e.g., The Random House Dictionary of the English Lan-* *guage* 969 (Unabridged) (2d ed.1987) (defining "incur" as "to become liable or subject to through one's own action; bring or take upon oneself").

I write separately to explain the interrelatedness of the progress payment and incurred costs concepts. A contractor is entitled to progress payments when it has incurred a cost. In turn, a contractor incurs a cost when it is obligated to pay for materials requested from a supplier. The facts demonstrate that Baird falsified documents to satisfy both of these requirements. That is, he back-dated the purchase order and falsified the invoices and receiving documents in order to have proof that he had incurred a cost, which would then entitle him to a progress payment. Despite this evidence, however, I agree with the majority that we must reverse Baird's conviction because the district court's instructions to the jury ignored this interrelatedness by failing to define the term "incurred costs."