JOURNAL ENTRY AND OPINION
Defendant-appellant Gregory Harris ("Harris") appeals his conviction by a jury and his sentence for the crime of gross sexual imposition in violation of R.C. 2907.05, a felony 3.
In October 1998, the twelve-year-old victim in this case ("girl") was staying overnight with her seven-year-old brother at her aunt and uncle's ("Harrises") house. The girl and her brother would spend one or two weekend nights a month visiting the aunt and uncle overnight because the children were both good friends with the aunt and uncle's seven-year-old daughter ("cousin"). Although the children's and cousin's mothers were sisters, the mothers often fought. Nonetheless, the mothers encouraged the relationship between the children.
On the night in question, the girl fell asleep on a couch in the basement of the Harris's house where the three children had been playing. In the middle of the night she was awakened when the cat jumped on her. As she was trying to fall back to sleep, her uncle, the defendant, came down to the basement and asked her whether she was awake. When she told him she was, he put his penis in her hand, held his hand over it, and had her rub it. The girl testified that her uncle told her "that it felt good" and then "peed himself" and walked upstairs. She wiped her hand off and went to her cousin's bedroom for the rest of the night.
The next morning the defendant cooked the children breakfast, and nothing was said about the night before. The girl did not speak to anyone about this incident because she was scared and afraid the adults would be mad at her or would not believe her.
The girl told her mother that she did not want to go over to the Harrises' house anymore. Around two weeks later, the defendant phoned the girl's home and asked whether her mother was there. When the girl told him she was not, he asked the girl whether she needed any money. She told him she did not, and he warned her not to tell her mother about his phone call. Despite his warning, she immediately called her mother and told her about the conversation.
Several weeks later, she was at her maternal grandmother's house to watch her great-grandmother so her grandmother could go shopping. After the girl arrived at the grandmother's house, she realized that the defendant was there when he called out to her from a back room. He asked the girl to go to Burger King and get him some food, and she did. When she gave him the food, he tried to kiss her, but she managed to wriggle away. Again, she told no one about this incident.
Finally, on the Saturday after Thanksgiving, the girl and her seven-year-old brother were at the home of another of her mother's sisters with the cousin. When the cousin's mother, Mrs. Harris, came to pick up her daughter, she also took the girl and her brother home with her. The girl and her brother ended up staying overnight at the house of their aunt, Mrs. Harris. The defendant is the husband of this aunt.
In the morning, Mrs. Harris left for church while the girl, her brother, and her cousin slept on the living room floor. While Mrs. Harris was gone, the defendant sat by the girl, slipped his hand under her top and began to stroke her back. She pushed him away and he again tried to stroke her back under her top. She got up and locked herself in the bathroom. She had her brother bring her the phone and tried repeatedly to call her mother or her grandmother, but both lines were busy because the women were talking to each other.
Eventually the defendant ordered her to come out of the bathroom, and she spent the remainder of the time at the Harrises' house in the company of her brother and cousin. Later, Mrs. Harris took her to her grandmother's house, where the girl was sullen and withdrawn. When her grandmother asked her what was wrong, she began to cry and shake. She finally told her grandmother what had happened that morning and the grandmother immediately called the girl's mother. After relaying the information to the mother, the family decided to go to the police.
At the police station, the girl told the detective about the incident in the basement. The detective recommended that the family undergo counseling and then contacted the defendant.
The defendant later voluntarily went to the police station where he told the detective that none of what the girl described had happened. However, when the detective asked him whether he would put that in writing, the defendant, saying that he had to be somewhere, declined and left the police station. He offered to take a lie detector test, but then did not show up for the appointment. Several weeks after the missed appointment, the detective called the defendant, who told him that his attorney had instructed him not to take the lie detector test. The detective informed the defendant that he intended to present his case to the grand jury.
A few weeks after the phone conversation between the detective and the defendant, Mrs. Harris, the defendant's wife, moved to North Carolina. The defendant followed a few months later. After he was indicted by the grand jury, the defendant was extradited from North Carolina and charged. He made bail and returned to North Carolina. He refused to plead his case, stating that he did not do the things he was accused of and would go to trial.
At trial, the girl testified, as did her mother, grandmother, two social workers and the detective. Mrs. Harris testified for her husband. The jury found defendant guilty as charged. The court sentenced him to two years for the third degree felony of gross sexual imposition.[1]
Appellant timely appealed, and states eight assignments of error.
For his first assignment of error, appellant states,
 I. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THE JURY TO THE EFFECT THAT MR. HARRIS COULD BE CONVICTED OF GROSS SEXUAL IMPOSITION EVEN IF HE DID NOT SPECIFICALLY INTEND TO BE SEXUALLY GRATIFIED OR AROUSED.
Appellant argues that in giving the jury instruction, the trial court committed plain error. The jury instruction in question states:
 Before you can find the Defendant guilty, you must find beyond a reasonable doubt that between October 1st and October 15th, 1998, in Cuyahoga County, Ohio, the Defendant had sexual contact with [victim], who was not his spouse, and that at the time of said sexual contact, the other person, [victim], was less than 13 years of age; to wit, age 12, regardless of whether the Defendant knew her age.
 Now, sexual contact means any touching of an erogenous zone of another including, without limitation, the thigh, genitals, buttock, pubic region or, if such person is female, a breast, for the purpose of sexually arousing or gratifying either person.
 Having sexual contact for the purpose of sexually arousing or gratifying either person is an essential element of the crime of gross sexual imposition.
* * *
 Now, purpose to have sexual contact is an essential element of the crime of gross sexual imposition.
 A person act [sic] purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question, there was present in the mind of the defendant a specific intention to have sexual contact with [victim], whose age at the time was under 13 years.
 Now, when the central idea, essence, or gist of the offense is a prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct.
 Now, the purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence.
* * *
 If you find that the State failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense of gross sexual imposition as charged in the indictment, your verdict must be not guilty according to your findings.
* * *
 The Court cannot embody all the law in any single instruction. In considering one portion, you must consider it in light of and in harmony with all the other instructions that you've been given.
Tr. at 394-399. (Emphasis added.)
Because defendant did not object to this charge at the trial level, it can only be addressed under the plain error standard. However, plain error applies only in very limited circumstances. Crim.R. 52 defines harmless error and plain error:
 (A) Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.
 (B) Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
In order to constitute plain error, therefore, the error has to have affected a substantial right of the defendant; "affecting substantial rights `means that the error must have been prejudicial; it must have affected the outcome of the * * * court proceedings." US v. Baird
(1998), 134 F.3d 1276, 1283. In order for the alleged error to have been plain error as defined by Crim.R. 52, therefore, the defendant must show that the outcome of the trial would have been different but for the error. Additionally, the courts have noted that "[p]lain error is error which is clear or obvious." Id. at 1282.
Defendant argues that the "regardless of intent" phrase was incorrect because it implies that the element of causing or getting sexual arousal is not a necessary element of the crime of gross sexual imposition. Specifically, he objects to the portion of the "purposely" instruction, taken verbatim from Ohio Jury Instructions, which states: "a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by hisconduct." (Emphasis added.) Because intent to arouse sexually is a necessary element of the crime of gross sexual imposition, defendant argues that the jury may have been confused by this contradictory instruction.
The instruction for gross sexual imposition references the reader to the jury charge for purposely in its comments. As defendant notes in his appellate brief,
 the incorrect instruction was taken from a section of the Ohio Jury Instructions that the authors warned was to be "given in rare cases." OJI, 409.01(3 [sic] and Comment thereto. The Comment specifically warned that in giving the "regardless of purpose" instruction in situations where an intended result was part of the offense was both "incorrect and confusing." Id. Despite this clear admonition, the trial court erroneously instructed the jury by reading the inapplicable section.
"* * * [T]his court in State v. Jacks (1989), 63 Ohio App.3d 200, 205,578 N.E.2d 512, condemned use of the foreseeability instruction where specific intent must be proven by the state" because "it may undercut themens rea" of the crime. (Emphasis added.) State v. Parker (April 9, 1998), Cuyahoga App. No. 71474, unreported, 1998 Ohio App. LEXIS 1507, cited by State v. Jordan (Apr. 29, 1999), Cuyahoga App. No. 73453, unreported, appeal dismissed (1999), 86 Ohio St.3d 1488, 716 N.E.2d 721.
However, this court has also clarified that the Supreme Court of Ohio "determined that the jury instructions must be viewed as a whole and will not be reversed if they, in their entirety" make clear that the jury must find specific intent or purpose. Jordan, supra, Jacks, supra, State v.Phillips (1995), 74 Ohio St.3d 711, 100, 656 N.E.2d 653; State v.Burchfield (1993), 66 Ohio St.3d 261, 262-263, 611 N.E.2d 819.
In the case at bar, the trial court was quite clear in explaining the charge itself. When the court defined the actual offense of gross sexual imposition, the court specifically told the jury that the intent to sexually arouse or gratify was an essential element of the crime. The court instructed the jury, moreover, to take the jury charge as a whole: "In considering one portion, you must consider it in light of and in harmony with all the other instructions that you've been given." Tr. at 399. The charge itself adequately emphasized the requirement of the intent to sexually arouse or gratify. The instructions as a whole, therefore, enabled the jury to understand the essential elements of the offense. "Various instructions to a jury must not be considered in isolation from each other. In determining whether prejudicial error occurred at trial, a jury charge must be considered as a whole." Statev. Workman (1984), 14 Ohio App.3d 385, 393.
In the case at bar, the jury could interpret the broad language of the "regardless" phrase to refer to some generalized end for which the criminal purpose could be further used. In other words, defendant could intend both to gratify his own sexual impulses and also to mock, terrorize, or demean his victim. While this court continues to condemn the use of this instruction when a purposeful intent is required, we find no prejudicial effect is shown here, especially because the evidence clearly showed his purpose was gratification. As the victim said, defendant "told me it felt good."
Thus although it did contain the error defendant alleged, the jury charge was not so erroneous as to mislead the jury into a wrongful conviction. The court's instruction to take the charge as a whole and its emphasis on the necessity for defendant to intend to arouse in its charge on gross sexual imposition are sufficient to prevent any confusion the contradiction might have engendered.
Appellant's first assignment of error is overruled.
For his second assignment of error, appellant states,
 II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PERMITTED THE PROSECUTION TO INTRODUCE EVIDENCE THAT MR. HARRIS FAILED TO FURNISH THE POLICE WITH A WRITTEN STATEMENT.
During his testimony, Detective Brian Rinas discussed an interview the detective had with the defendant prior to his arrest. The detective stated that after the defendant had been informed of all the allegations against him, he denied them. The prosecutor then asked the detective, "Did you ask him if he would be willing to make a written statement?" The detective replied, "Yes, I did. And he declined." The reason the defendant gave for not giving a written statement was "he had somewhere to go." Tr. at 318.
Defendant argues that this statement in open court constitutes a violation of his Fifth Amendment right to remain silent. The issue is not, however, whether this statement violated his right to remain silent; he waived that right when he discussed the allegations with the police. He also waived any prohibition against the witness clarifying the form that the discussion took, that is, the oral and not written form. Additionally, defendant declined to put his statement in writing, not because he was being evasive, but because he had another obligation and could not take the time to write the statement at that time. Thus there was no negative context to what the detective reported. The lack of a written statement was not used to indicate any lack of cooperation with the police on the part of defendant, nor did it indicate a wish on the part of defendant to remain silent. Even if it did, there is no evidence that it had any impact on the outcome of the case, and therefore does not constitute plain error.
Appellant's second assignment of error is overruled.
Appellant's next three assignments of error address evidence he claims was improperly admitted. His third assignment of error states,
 III. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED EVIDENCE REGARDING THE IMPACT THAT MR. HARRIS' ALLEGED ACTIONS HAD UPON THE ALLEGED VICTIM.
The testimony of the victim, her mother, grandmother and social worker indicated that the victim had behavioral and academic difficulties after the incident in October. Appellant claims that the victim impact evidence was prejudicial and biased the outcome of his trial.
Appellant is correct in stating that victim impact evidence should be reserved until the punishment phase of a trial. True victim-impact evidence * * * shall be considered by the trial court prior to imposing sentence upon a defendant, not during the guilt phase of the proceedings. State v. Fauteneberry (1995), 72 Ohio St.3d 435, 440. However, "an erroneous admission of victim-impact evidence does not necessarily constitute reversible error. * * * There must be some indication that the trier of fact was `influenced by or considered' the victim-impact evidence. * * * To show prejudice, there must be some reasonable probability that the outcome would have been different." Statev. Sova (Apr. 9, 1998), Cuyahoga App. Nos. 71923, 71924, unreported, 1998 Ohio App. LEXIS 1512, at *13, citations omitted. The victim's testimony focused primarily on the actual incident and not on its impact on her. She clearly articulated the defendant's actions which constituted the offense, describing them as she innocently comprehended them. Defendant produced no evidence to directly contradict the victim's testimony. He offered only the testimony of his wife, who was not present. The record contains more than adequate direct evidence for the jury to determine beyond a reasonable doubt that the defendant committed the offense without ever considering the victim-impact evidence.
"Where there is no reasonable possibility that allegedly unlawful testimony contributed to a conviction, the error is harmless and there will not be grounds for a reversal." Id. at 13-14, citation omitted. For that reason, the error in the case at bar is harmless.
Appellant's third assignment of error is overruled.
Appellant's fourth assignment of error also addresses allegedly improperly admitted evidence. It states,
 IV. THE TRIAL COURT COMMITTED ERROR WHEN IT ADMITTED [VICTIM'S] HEARSAY STATEMENTS TO HER FAMILY MEMBERS, COUNSELORS AND OFFICER RIMAS.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Appellant objects to the victim's mother and grandmother testifying as to what the victim told them had occurred because they were not first-hand witnesses to the alleged events, and because their testimony prejudiced the jury.
The trial court permitted these statements to be entered into evidence only after the prosecutor laid a proper foundation for them. Each of the women stated that the victim was shaking, crying and very disturbed when she told them that the defendant had put his hand under her shirt. The court permitted the statements under the "excited utterance" exception to the hearsay rule: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
The courts have given significant leeway to statements by children who are victims of sexual abuse under this exception to the hearsay rule. The Supreme Court of Ohio stated,
 [i]n the cases of statements made by children who say they were sexually assaulted, we have upheld the admission of those statements even when made after a substantial lapse of time, but in those cases we have done so because we recognize that children are likely to remain in a state of nervous excitement longer than would an adult. * * *
 This trend of liberalizing the requirements for an excited utterance when applied to young children who are the victims of sexual assault is also based on the recognition of their limited reflective powers. Inability to fully reflect makes it likely that the statements are trustworthy.
State v. Taylor (1993), 66 Ohio St.3d 295, 304. The fact that the victim did not tell her grandmother and mother about the incident immediately, therefore, does not disqualify their testimony as to what she told them. She was agitated, crying, and shaking when she told them about what had happened; she was clearly still "under the stress of excitement" caused by the incident.
Further, even if the women's testimony had failed to qualify under the excited utterance exception, it would not necessarily have been prejudicial to defendant because
 the pertinent testimony elicited was merely a recitation of events already described by the complainant. The jury was free to assess [the victim]'s credibility, and although the elicited hearsay testimony gave more weight to her account, its introduction cannot be said to be either unreasonable, arbitrary or unconscionable. Furthermore, the testimony of the complainant alone was sufficient enough to convict. As a result, admission of such testimony does not rise to the level of abuse of discretion.
State v. Kebe (Nov. 12, 1998), Cuyahoga App. No. 73398, unreported, 1998 Ohio App. LEXIS 5410, at *5, citation omitted. The victim's testimony was clear, specific, and consistent with the statements made by the women. Their testimony merely served to add to the credibility of the victim. There is no indication, however, that the victim's testimony would have been inadequate to convict without this corroboration.
Appellant also argues that the testimony of the detective as to what the victim told him had occurred was inadmissible hearsay. The detective stated, however, that when he interviewed her, the victim "was fidgeting, she looked traumatized." Tr. at 316. The victim's statements, therefore, fall under the excited utterance exception to the hearsay rule. Just as the mother and grandmother'stestimony was admissible under the excited utterance exception, so also is the detective's. Hence, the trial court did not err in admitting these statements.
The appellant also complains that the statements of the social worker are inadmissible hearsay. Those statements are admissible because they fall under another exception to the hearsay rule, Evid.R. 803(4), which states,
 [t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
 Statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
The social worker treated the victim for five sessions. Although the social worker did not specialize in the treatment of children, she did specialize in the treatment of sexual abuse victims, and was therefore qualified as a treating medical professional. "[H]earsay statements made to a social worker are admissible `as long as they were being made for the purposes of diagnosis and treatment.' * * * The diagnosis and treatment by a social worker may require statements of the cause of the injury as well as the identification of the perpetrator of the injury."State v. Giles (July 14, 1994), Cuyahoga App. No. 65731, unreported, 1994 Ohio App. LEXIS 3108, at *12, citations omitted. The social worker's testimony that the victim had told her that her uncle had sexually abused her was admissible testimony, therefore, under Evid.R. 803(4).
Accordingly, appellant's fourth assignment of error is overruled.
In his fifth assignment of error, appellant again objects to evidence he claims is inadmissible.
 V. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED EVIDENCE OF MR. HARRIS' CHARACTER IN THE FORM OF OPINION AND ALLEGED OTHER ACTS IN VIOLATION OF R.C. 2945.59, EVID.R. 404 AND MR. HARRIS' RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Appellant claims that the evidence introduced concerning his contacts with the girl which were not the incident with which he was charged are inadmissible as "other acts" evidence. Evid.R. 404(B) states,
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Appellant complains that the events recounted by the victim's mother and grandmother were not the actions he is charged with committing and, therefore, testimony about these events is not relevant. Specifically, defendant objects to the mother's testimony about the phone call in which the defendant offered money to the girl and to the testimony of both the mother and the grandmother regarding the incident in which defendant placed his hand under the girl's shirt. He also objects to the admission of evidence of his phone call to the girl and his attempt to kiss her.
Appellant is correct in stating that these acts do not constitute a crime with which he is charged. They can be considered relevant, however, in showing defendant's intent to engage in sexual contact with the girl. An attempted kiss can easily be a prelude to sexual contact, as can touching underneath clothing. So too defendant's telephone call in which he offered the girl money and requested secrecy makes his motive suspect. "`In any criminal case in which the defendant's motive or intent * * * or system in doing an act is material, any acts of the defendant which tend to show his motive or intent * * * or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto * * *." State v. Gumm (1995), 73 Ohio St.3d 413,426.
Even if the other acts introduced into evidence were not admissible as other acts evidence, their introduction would be harmless error. "Even assuming, arguendo, that the challenged evidence should have been deemed inadmissible, we find on the basis of the record as a whole that [defendant] received a fair trial and that it is beyond a reasonable doubt that the jury would have * * * convicted this defendant * * *."Id. at 426. In the case at bar, the girl's testimony alone was more than sufficient to convict the defendant. The other acts testified to, while they corroborate the behavior of defendant, were neither significant enough nor prejudicial enough to make a difference in the outcome of the trial.
Appellant also objects to what he terms "opinion" evidence of his character. The complained of testimony consists of the following exchange between the victim and the prosecutor:
 Q. What did you think about your Uncle Greg [defendant] before this happened?
A. I thought he was a good person.
Q. What do you think of him now?
A. Not so good.
Tr. at 167-168.
Character evidence is controlled by Evid.R. 404, which states in pertinent part,
 (A) Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
The statute itself provides a definition of the type of evidence constituting character evidence in this sort of case. The statute for gross sexual imposition, R.C. 2907.05(D) and (E), provides, in pertinent part, the following for introduction of character evidence of a defendant:
 (D) Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
 (E) Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.
None of the victim's testimony came close to addressing the defendant's sexual history. The mere statement by the victim that her opinion of the defendant was not so good after he sexually assaulted her comes nowhere near close enough to character evidence as envisioned by the drafters of the evidence rule or the statute to qualify as testimony which could affect the outcome of the trial. Further, there is no indication in the record that this statement had any impact on the verdict. As we stated previously, the girl's testimony, standing alone, was strong enough in its factual description of the offense to support a conviction for gross sexual imposition. Thus, even if this one statement by the girl had been considered character evidence, it would have been harmless error.
Appellant's fifth assignment of error is overruled.
For his sixth assignment of error, appellant states,
 VI. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court provided a two-part test for reviewing claims of ineffective assistance of counsel. The defendant must show that his lawyer's "performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance." State v. Gonzalez (Mar. 15, 2001), Cuyahoga App. No. 77338, unreported, 2001 Ohio App. LEXIS 1185, at *15. (Emphasis added.) Appellant must show that but for his counsel's substandard performance the outcome of his case would have been different. However, "[j]udicial scrutiny of a lawyer's performance must be highly deferential." Id.
As the United States Supreme Court said in Strickland,
 An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.
 Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.
Strickland at 692.
Appellant argues that his counsel failed to object to all the following: to the allegedly erroneous jury charge, to the testimony regarding defendant's refusal to give a written statement to the police, to hearsay evidence regarding "other acts," to the victim-impact evidence, and to character evidence. He alleges that absent these errors, the outcome of the trial would have been different.
First, because we have overruled appellant's assignments of error on all the above listed "attorney errors," we cannot say that the attorney committed error at all. Even if any of the alleged errors had been actual errors, appellant made no showing that any or all of them would have made a difference in the outcome of the trial. The victim's testimony alone was enough to convict the appellant. From our review of the record, we conclude that any trial strategy or "errors" on the part of appellant's counsel would not have changed the outcome of the trial. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 702.
Appellant's sixth assignment of error is, therefore, overruled.
Appellant's last two assignments of error relate to sentencing. The seventh assignment of error states,
 VII. THE TRIAL COURT ERRED WHEN IT IMPOSED MORE THAN THE MINIMUM TERM OF IMPRISONMENT UPON MR. HARRIS WITHOUT MAKING THE REQUISITE FINDINGS PURSUANT TO R.C. 2929.14(B).
R.C. 2929.14(B) requires the minimum prison term on the basis of the convictions here
 unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others. (Emphasis added.)
The record shows that the court did not make the required finding under R.C. 2929.14(B), although the court did provide a foundation for a finding. The court noted, for example, that "the injury to this victim the Court finds extremely serious." Tr. at 419. The court also noted the discrepancy in size between the victim and the defendant: "You are a tall man. * * * She was a young girl." The court further noted that the victim "suffered serious * * * psychological harm as a result of the offense. She has had counseling and was traumatized by your actions." The court also pointed out to the defendant, "[t]his is something she won't be able to forget, sir." Id. The court concluded that "for all those reasons, * * * because of the seriousness of the offense, the Court is going to impose a term of two years at the Lorain Correctional Institution." Tr. at 419-420. In its sentencing, the court additionally made a point of noting that the sentence was "not the minimum." Id. at 420.
While all these comments provide support for the finding required by the statute, nothing the court says rises to the level of a finding that the minimum would "demean the seriousness of the offender's conduct." "The Ohio Supreme Court has made it clear in State v. Edmondson [(1999),86 Ohio St.3d 324,] that, where the sentencing statute requires `findings' to be made, close adherence to the precise statutory language will be required." Griffin and Katz, Ohio Felony Sentencing Law (2000 Ed.) p. 357-368, T 1.20. In the case at bar the statutory requirement was not met.
The seventh assignment of error is well taken.
For his eighth and final assignment of error, appellant states,
 VIII. THE TRIAL COURT IMPROPERLY CONSIDERED UNCHARGED ACTS OF MR. HARRIS AS AN AGGRAVATING FACTOR AT SENTENCING.
At the sentencing hearing, the trial court discussed the presentence report as well as the victim-impact statement. The court noted that defendant's presentence report included a previous drug conviction as well as several arrests for which he was never charged. The court also mentioned from the report an assault on a female as well as a pending trafficking in cocaine charge. The court noted that defendant had twice violated probation. Finally, the court pointed out that from 1991 to the current charge, "[h]e was law-abiding for a significant number of years, no criminal involvement; however, the injury to this victim the Court finds extremely serious." Tr. at 418-419. The court then proceeded to discuss the impact of the crime on the victim.
"The court may, in the sentencing process, consider information which would have been inadmissible at trial." State v. Cassidy (1984),21 Ohio App.3d 100, syllabus paragraph one. The trial court did not err in referencing the defendant's presentence report when it sentenced him. In discussing the admissibility of a presentence report in a sexual predator hearing, the Supreme Court of Ohio stated,
 Evid.R. 101(C) excepts application of the Rules of Evidence, including the hearsay rule, from certain proceedings, such as miscellaneous criminal proceedings. Among those listed as specifically excepted from the Rules of Evidence are proceedings for * * * sentencing * * *.
State v. Cook (1998), 83 Ohio St.3d 404, 425. The trial court's discussion of the defendant's previous history other than convictions was appropriate.
Appellant's eighth assignment of error is overruled.
Judgment affirmed in part and reversed in part; this case is remanded for resentencing.
It is ordered that appellee and appellant share equally the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., and TERRENCE O'DONNELL, J., CONCUR.
[1] A third degree felony is punishable by one to five years in prison. R.C. 2929.14(A)(3).